NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Scott Salyer, individually, and as Trustee of the Scott Salyer Revocable Trust, | NO. C 05-03562 JW |
| Plaintiff(s), | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| Salyer American Fresh Foods; Fred Salyer; Linda Salyer Lee, individually and as Trustee of the Linda Salyer Lee Revocable Trust; Thomas Welch; Donald Blodgett; and Lawrence Ryan, | |
| Defendant(s). | |

## I. INTRODUCTION

Defendant Salyer American Fresh Foods ("SAFF") is a family owned business with approximately 825 employees and annual gross sales of fresh produce in excess of $100 million.[1] Despite its financial success, the business has been plagued with family disputes, the most recent of which is the impetus for the instant suit. Plaintiff Scott Salyer has brought an ostensibly RICO claim and other state and federal claims against his sister, Linda Salyer Lee ("Linda Lee"), his father, Fred Salyer, and three officers and shareholders of SAFF, Thomas Welch ("Welch"), Donald

---

[1] Decision of the California Court of Appeal, Sixth Appellate District, filed December 22, 2004.

Blodgett ("Blodgett"), and Lawrence Ryan ("Ryan").  Defendants' motion to dismiss was heard on March 13, 2006.[2]  Based upon all papers filed to date, the Court grants Defendants' motion to dismiss.

## II. BACKGROUND[3]

The Salyer family has had businesses in common for generations.  Complaint, ¶13.  In 1995 through 1996, due to irreconcilable differences between Fred Salyer, Linda Lee and Scott Salyer, the family businesses were divided up, except SAFF.  Id.  Fred Salyer, Linda Lee and Scott Salyer remained shareholders in SAFF, with Scott Salyer being a minority shareholder.  Id.  The operation of SAFF has been acrimonious, and Defendants Fred Salyer and Linda Lee "have demonstrated unrelenting hostility to Scott Salyer."  Id.  Their "overriding objective" has been to remove Scott Salyer from the business affairs of SAFF.

The parties have been involved in prior litigation in state court, which has resulted in court-ordered prohibitions on Defendants Fred Salyer and Linda Lee's alleged "abuse of corporate powers."  Id. at ¶14.  More specifically, at one point Fred Salyer and Linda Lee had Scott Salyer removed as the Chief Financial Officer and Secretary of SAFF.  Id. at ¶15.  Monterey County Superior Court Judge Richard Silver ordered Defendants to reinstate Scott Salyer to his previous positions, and to implement a Revised Shareholders' Agreement.  Id. at ¶15.  Fred Salyer and Linda Lee, however, circumvented Judge Silver's order by forming the "FRED/LINDA ENTERPRISE."  Id. at ¶16.  Defendants Welch, Blodgett and Ryan also joined the FRED/LINDA ENTERPRISE.  Id.  "The purpose and effect of said ENTERPRISE was and is to usurp for its members the business opportunities and assets of SAFF and to deprive Plaintiff of the same, and to shield from scrutiny Defendants' unlawful activities."  Id.  For example, Defendants denied Scott Salyer the opportunity to inspect the books and records of SAFF.  Id. at ¶17.  Scott Salyer petitioned the Monterey County

---

[2] Defendants withdrew their motion to stay.  See Reply Memorandum In Support of Motion to Dismiss at 1:22-23.

[3] The allegations set forth in the Background section of this Order are taken from the Complaint, and are accepted as true for purposes of the present motion only.

1  Superior Court, and on March 10, 2005, the court ruled in his favor and issued an Order for
2  Inspection of Books and Records. After the Order for Inspection was issued, Defendants deleted,
3  altered and removed large quantities of stored electronic data. Id. at ¶18.

4  Scott Salyer was able to access some stored data, however. Id. at ¶19. In particular, he
5  reviewed e-mails stored on Defendant Welch's computer that revealed he had used company
6  computers to participate in pornographic chat rooms, to down-load and distribute sexually explicit
7  and pornographic materials to SAFF employees, and to sexually harass other SAFF employees. Id.
8  Scott Salyer also learned that Defendant Welch "had used company funds to take gambling trips to
9  Las Vegas and Lake Tahoe, bringing with him, at the company's expense, another SAFF employee
10 for a romantic tryst." Id.

11 Based upon his review of the electronic data, Scott Salyer also determined that there were
12 transfers of millions of dollars of company funds which had not been properly documented or
13 accounted for. Id. at ¶20. Scott Salyer alleges, on information and belief, that Defendants Fred
14 Salyer and Linda Lee used the services of an accounting firm to shield self-dealing with the
15 FRED/LINDA ENTERPRISE. Id.

16 Scott Salyer further alleges that Fred Salyer and Linda Lee engaged in misconduct by
17 approving exorbitant salaries and other benefits and remuneration for Defendants Welch, Blodgett,
18 and Ryan. Id. at ¶22. They also retained the services of corporate counsel to prepare a
19 "Management Agreement" that provided for a large "golden parachute" for key management
20 employees other than Scott, in the event that Scott were ever to obtain control of SAFF. Id. at ¶24.
21 Scott Salyer also alleges that Defendants issued new shares to Welch, Blodgett, and Ryan "to enable
22 Linda Lee to retain control of the corporation upon the demise of Fred Salyer, who is more than 80
23 years old, i.e. avoid a deadlock upon Fred Salyer's death." Id. at ¶25. All of these acts were done in
24 furtherance of Defendants' plan to exclude Scott Salyer from SAFF and to usurp SAFF for
25 themselves. Id. at ¶¶22-25.

26 In April to July of 2005, Scott Salyer, in his capacity as CFO, complained to Fred Salyer and

3

Linda Lee about the acts of sexual harassment committed by Defendant Welch, the improper use of company facilities and assets to distribute and download pornographic materials, as well as other activities. Id. at ¶26. On or about July 13, 2005, Fred Salyer and Linda Lee notified Scott Salyer that he was being fired from his positions as SAFF's CFO and Treasurer. They ordered Scott Salyer to leave the board meeting immediately, and contacted the County Sheriff to remove him by force. Id. at ¶27.

Scott Salyer asserts several claims: (1) conspiracy to violate, and violations of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§1961-1968 ("RICO") against all individual Defendants; (2) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. against all Defendants[4]; (3) violation of the Stored Communications Act, 18 U.S.C. §2701 et seq. against all individual Defendants; (4) violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030 against all individual Defendants; (5) breach of fiduciary duties against all individual defendants; and (6) unfair business practices – violation of California Business and Professions Code §§17200 et seq. – against all Defendants. In his prayer for relief, Scott Salyer seeks general and special damages; treble damages under RICO; punitive damages; attorneys' fees and costs; injunctive relief; disgorgement of profits; and such other relief as the Court deems just and proper.

Defendants move to dismiss virtually all of the claims pursuant to Rule 12(b)(6), Fed.R.Civ.P. Defendants contend that claim and issue preclusion bar Scott Salyer from stating the first, fifth, and sixth causes of action. Defendants also contend that the first cause of action also fails to state a claim with the requisite specificity to survive a challenge under Rule 9(b), Fed.R.Civ.P. More specifically, Defendants contend that Scott Salyer has failed to plead "racketeering activity," "pattern," and "enterprise" with the requisite specificity. Further, Defendants contend the third and fourth causes of action for violations of the Store Communications Act and the Computer Fraud and Abuse Act are legally deficient because Defendants are authorized users of the computer system at issue, and the allegations fail to comply with the particularity requirements of Rule 9(b),

---

[4] Scott Salyer later filed a voluntary dismissal of Defendants from the second cause of action.

4

Fed.R.Civ.P.

## III. STANDARDS

A Rule 12(b)(6), Fed.R.Civ.P., motion to dismiss tests the legal sufficiency of a claim. Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). In ruling on a motion to dismiss, the court must accept as true all allegations of material fact and must construe said allegations in the light most favorable to the non-moving party. Western Reserve Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enterprises, 476 F.2d 393, 396 (9th Cir. 1973).

A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts stated under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). In order to grant a motion to dismiss, it must appear to a certainty that a plaintiff would not be entitled to relief under any set of facts which could be proved. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## IV. DISCUSSION

A. Stored Communications Act Claim

Scott Salyer alleges that the individual Defendants violated 18 U.S.C. §2701(a)(1) of the Stored Communications Act by "surreptitiously altering, deleting and preventing access to the stored electronic data of SAFF in contravention of a court order and destroying evidence ordered by the Court to be preserved." Complaint, ¶48. Defendants contend that the claim is legally deficient because they are authorized users of SAFF's computers.

The Stored Communications Act makes it unlawful for anyone to "(1) intentionally access[] without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceed[] an authorization to access that facility; and thereby obtain[], alter[], or prevent[] authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. §2701(a). The Act exempts from liability conduct authorized "by the person or entity providing a wire or electronic communications service" or conduct authorized "by a

5

1 user of that service with respect to a communication of or intended for that user." 18 U.S.C.
2 §2701(c).

3 It is beyond dispute that all individual Defendants are authorized users of SAFF's computers
4 because they are officers of SAFF. Therefore, the individual Defendants cannot be held liable for
5 any alleged violation of the Stored Communications Act.

6 Scott Salyer contends, however, that the individual defendants were under court order not to
7 alter delete, or prevent access to the books and records of SAFF, and therefore they were not
8 "authorized" users of SAFF's computers. However novel, the argument is unpersuasive. At least
9 one court has observed that the general purpose of Stored Communications Act was to create a cause
10 of action against computer hackers and electronic trespassers. See Sherman & Company v. Salton
11 Maxim Housewares, Inc., 94 F.Supp.2d 817 (E.D. Mich. 2000). The individual Defendants' alleged
12 violation of the Monterey County Superior Court's order does not transfer them into either hackers
13 or electronic trespassers.

14 Therefore, the claim for violation of the Stored Communications Act is dismissed with
15 prejudice.

16 B.  Computer Fraud and Abuse Claim

17 Scott Salyer alleges that the individual Defendants violated 18 U.S.C. §1030(a)(2)(C) of the
18 Computer Fraud and Abuse Act by "surreptitiously altering, deleting and preventing access to the
19 stored electronic data of SAFF in contravention of a court order and destroying evidence ordered by
20 the Court to be preserved." Complaint, ¶¶48, 52. As with the Stored Communications Act claim,
21 Defendants contend that the Computer Fraud and Abuse Claim is legally deficient because
22 Defendants are authorized users of SAFF's computers

23 The Computer Fraud and Abuse Act makes it unlawful for anyone to, among other things,
24 "(2) intentionally access[] a computer without authorization or exceed[] authorized access, and
25 thereby obtain[]--(C) information from any protected computer if the conduct involved an interstate
26 or foreign communication." 18 U.S.C. §1030(a)(2)(C). The Act defines the term "exceeds

28  6

authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. §1030(e)(6).

As stated previously, it is beyond dispute that all individual Defendants are authorized users of SAFF's computers because they are officers of SAFF. Therefore, the claim for violation of the Computer Fraud and Abuse Act is dismissed with prejudice.

C. RICO Claim

Scott Salyer asserts a claim for violation of 18 U.S.C. §1961(c), which provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. §1962(c). Defendants contend the claim must be dismissed because the following elements of the claim have not been pled with the particularity required by Rule 9(b), Fed.R.Civ.P.: "racketeering activity"; "pattern"; and "enterprise." The Court agrees.

Scott Salyer alleges that the FRED/LINDA ENTERPRISE exists separate and independent of SAFF, and its purpose is "to facilitate and carry out the racketeering activities described herein, including without limitation: the wrongful usurpation of corporate opportunities; the willing and deliberate contravention of Court Orders; the spoliation of evidence; the willful and deliberate destruction and alteration of stored communications data; the perpetuation of computer fraud; and the wrongful termination of Plaintiff's employment as an officer and director of SAFF." Scott Salyer alleges that Defendants committed multiple predicate racketeering activities, including (1) mail fraud in violation of 18 U.S.C. §1341; (2) wire fraud in violation of 18 U.S.C. §1343; (3) fraud; and (4) violations of the Stored Communications Act and Computer Fraud and Abuse Act.

To the extent the RICO claim is predicated upon the Computer Fraud and Abuse Act and the Stored Communications Act, the claim is legally flawed for reasons discussed already in Sections "A" and "B" above, and for the additional reason that these statutes are not enumerated in the list of

7

1 predicate acts in 18 U.S.C. §1961(1) (see e.g. Miranda v. Ponce Federal Bank, 948 F.2d 41 (1st Cir.
2 1991) ("to allow RICO damages for an injury caused other than by an enumerated predicate offense
3 would be tantamount to rewriting the statute")).

4     To the extent the RICO claim is predicated upon mail and wire fraud, the claim is also
5 legally flawed.  Scott Salyer alleges that "Defendants devised an intentional scheme or artifice to,
6 *inter alia*, deceive and defraud Plaintiff and federal and state tax authorities."  Complaint, ¶34.  The
7 allegation is conclusory, and unsupported by any factual detail.  The time, place, and manner of the
8 alleged fraud are completely absent.

9     Furthermore, Scott Salyer has failed to allege any predicate act with the requisite
10 particularity.  For example, Defendants allegedly deleted, altered, and removed large quantities of
11 SAFF's stored electronic data.  The details regarding the date, time, place, individuals involved, and
12 the type of data are not stated with any particularity, however.  Defendants also allegedly transferred
13 millions of dollars of company funds without proper documentation or accounting.  Once again,
14 however, Scott Salyer fails to allege with particularity who transferred the money or even when the
15 transfer(s) took place.  Nor does he explain what the documentation or accounting irregularities
16 consisted of.  Scott Salyer further alleges that Defendants defrauded federal and state tax authorities,
17 and once again, fails to provide any facts to support such a far reaching allegation.

18     Moreover, Scott Salyer has failed to allege that Defendants engaged in a "pattern" of
19 racketeering activity.  The Court acknowledges that Complaint contains a generalized allegation that
20 the racketeering was "continuous and on-going spanning a substantial time period of at least four
21 years."  Complaint, ¶35.  There are no facts alleged, however, to support a four-year period.  Instead,
22 the first racketeering activity alleged with any specificity occurred sometime in March of 2005, and
23 involved the spoliation of evidence.  Complaint, ¶18.  The alleged racketeering clearly ended on July
24 13, 2005, with Scott Salyer's termination.  As a matter of law, this five-month period and the nature
25 of the alleged racketeering activities cannot constitute a "pattern" of racketeering activity.  See e.g.

26
27
28     8

United States District Court
For the Northern District of California

1  Howard v. America Online, Inc., 208 F.3d 741, 750 (9th Cir. 2000).[5]

2  In sum, the RICO claim suffers from numerous factual and legal deficiencies which cannot
3  be cured by amendment.  Therefore, the RICO claim is dismissed with prejudice.

## V.  CONCLUSION

5  For the reasons set forth above, Defendants' motion to dismiss is granted with respect to the
6  claims for violation of RICO, the Stored Communications Act, and the Computer Fraud and Abuse
7  Act.  The dismissal of the three claims is with prejudice.

8  In light of the dismissal, the only claim remaining that arises under federal law is the Title
9  VII claim.  The remaining state law claims substantially predominate over the Title VII claim, and
10 as such the Court declines to exercise jurisdiction over the state law claims pursuant to 28 U.S.C.
11 §1367(c)(2).  Accordingly, the state law claims for breach of fiduciary duty and violation of
12 California Business and Professions Code §§17200, et seq., are dismissed, without prejudice to
13 renew the claims in state court.

14 Dated: March 15, 2006                               /s/James Ware
   05cv3562dismiss                                    JAMES WARE
15                                                    United States District Judge

---

[5] In his Opposition, Scott Salyer argues that his complaint includes a predicate act based upon a violation of 18 U.S.C. §1462 (criminalizing the knowing use of interactive computer service to import or transport obscene matters).  Opposition, p.20.  Title 18 U.S.C. §1462 does not appear anywhere in the complaint, however.  Moreover, even if he had cited to 18 U.S.C. §1462, there are no facts alleged to suggest that any Defendant engaged in an ongoing and open ended "pattern" of violating §1462.

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Andrew H. Swartz ahswartz@aol.com

Brian Maschler bmaschler@gordonrees.com

Joy A. Jaeger jjaeger@gordonrees.com

Philip D. Dracht pdracht@foleybezek.com

Rebecca Connolly Rebecca.Connolly@grunskylaw.com

Thomas G. Foley tfoley@foleybezek.com

**Dated: March 16, 2006**                                    **Richard W. Wieking, Clerk**

                                                             **By:_/s/JW Chambers_____**
                                                                 **Melissa Peralta**
                                                                 **Courtroom Deputy**